**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

KENDRICK GAUSSOIN
c/o National Student Legal Defense Network
1701 Rhode Island Ave NW,
Washington D.C. 20036,

on behalf of himself and all others similarly situated,

*Plaintiff*,

v.

LINDA MCMAHON, in her official capacity as Secretary of the Department of Education,
400 Maryland Avenue SW
Washington, D.C. 20202, &

UNITED STATES DEPARTMENT OF EDUCATION
400 Maryland Avenue SW
Washington, D.C. 20202.

*Defendants*

Case No. 26-cv-3784

## CLASS ACTION COMPLAINT

1. When a college closes before its students can finish their programs, the Higher Education Act (HEA) requires the Secretary of Education (the Secretary) to discharge their federal student loans. 20 U.S.C. § 1087(c)(1). Known as a "closed school discharge," this right erases all federal student loan debt incurred to attend the closed school and provides a refund of any amount already paid on the debt. *See generally* 34 C.F.R. § 685.214 (implementing regulations).

2. For more than 30 years, United States Department of Education (Department) regulations have made closed school discharges available to borrowers who were enrolled at the

time of closure or who withdrew within a prescribed period of time prior to such closure, often called the "look-back period." Throughout this 30-year period, regulations have also provided that the Secretary may extend the look-back period when a school closes under "exceptional circumstances."

3. Closed school discharge is non-discretionary; when a student satisfies the requirements, the Secretary "shall" grant the discharge. *See* 20 U.S.C. § 1087(c)(1).

4. On January 16, 2025, the Department announced its determination that schools and campuses owned by four for-profit college operators—Career Education Corporation (CEC), Education Management Corporation (EDMC), Education Corporation of America (ECA), and Bay State College—closed under "exceptional circumstances." Given this determination, the Department extended the closed school discharge look-back periods for each school (the "2025 Decision").

5. Without any explanation, public notice, or justification, Defendants have since unlawfully rescinded, abandoned, or refused to implement the 2025 Decision.

6. In September 2014, Plaintiff Kendrick Gaussoin enrolled at Brooks Institute (Brooks), a for-profit college owned by CEC. Less than one year later, on May 6, 2015, CEC announced that it would close or sell nearly all of its schools, including Brooks. Mr. Gaussoin's last day of attendance at Brooks was December 17, 2015, and the school officially closed in August 2016. Mr. Gaussoin never completed his program.

7. As part of the 2025 Decision, the Department determined that Brooks closed under "exceptional circumstances" and extended the look-back period back to May 6, 2015, the date of CEC's announcement. Because Mr. Gaussoin was enrolled at Brooks on May 6, 2015 and never completed his program, he is eligible for a closed school discharge under the 2025 Decision.

8. Mr. Gaussoin applied for the discharge on August 23, 2026. That application specifically invoked the extended look-back period announced in the 2025 Decision. Nevertheless, by letter dated August 31, 2026, the Department denied Mr. Gaussoin's application because he "withdrew more than 180 days before the school closed." The denial did not mention the 2025 Decision, the Secretary's determination that Brooks closed under exceptional circumstances, or the extended look-back period.

9. Mr. Gaussoin is not alone. On information and belief, thousands of student loan borrowers are entitled to closed school discharges but have not received them because the Department has unlawfully rescinded, abandoned, or refused to implement the 2025 Decision.

10. Mr. Gaussoin brings this class action pursuant to Federal Rule of Civil Procedure 23(b)(2) on behalf of himself and a class of similarly situated borrowers to compel the Department to comply with the 2025 Decision.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under federal law. The Court also has the authority to order a remedy pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

12. Because this is an action against an officer and agency of the United States, venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1). Venue is also proper in this district because Secretary of Education Linda McMahon performs her official duties here. *Id.* § 1391(e)(1)(A). Finally, a substantial part of the events giving rise to this action occurred in this district. *Id.* § 1391(e)(1)(B).

## PARTIES

13. Plaintiff Kendrick Gaussoin is a natural person who resides, and at all relevant times has resided, in Winsted, Connecticut.

14. Defendant Linda McMahon is sued in her official capacity as the Secretary of Education for the United States Department of Education.

15. Defendant United States Department of Education is a department of the executive branch of the United States government headquartered in Washington, D.C. and an agency of the United States within the meaning of 5 U.S.C. §§ 551(1), 701(b)(1).

## LEGAL FRAMEWORK

### Overview of the Closed School Discharge Regulations

16. The HEA requires the Secretary to discharge a federal student loan if the borrower was "unable to complete the program . . . due to the closure of the institution." 20 U.S.C. § 1087(c)(1). Parent PLUS loan borrowers are also eligible for a closed school discharge if the student on whose behalf the loan was taken out qualifies. *See* 34 C.F.R. § 685.214(a)(1).

17. Department regulations interpreting and applying this law have long made closed school discharges available to borrowers who were enrolled at the time of closure or who withdrew within a prescribed period before the closure. From 1994 until 2014, the borrower qualified if enrolled either when the school closed or within 90 days prior. In 2014, that look-back period was extended to 120 days. And in 2019, under then-Secretary Betsy DeVos, the look-back period was further extended to 180 days (for loans disbursed on or after July 1, 2020).

18. Throughout this time period, the Secretary has held the authority to extend closed school discharge eligibility beyond the default look-back period to borrowers who withdrew from schools that closed under "exceptional circumstances."

19. A borrower who withdrew within the look-back period is entitled to a closed school discharge unless the borrower completed the program "at another branch or location of the school

or through a teach-out agreement at another school, approved by the school's accrediting agency and, if applicable, the school's State authorizing agency." 34 C.F.R. § 685.214(d)(1)(i)(C).

20. When a borrower receives a closed school discharge, the borrower is no longer obligated to repay the loan or any of its associated charges or costs. The borrower is also reimbursed for payments made to date on the loan (whether made voluntarily or involuntarily), is no longer regarded as in default (if applicable), is immediately eligible for new Title IV loans and grants, and is entitled to have the Secretary report the discharge to credit reporting agencies (to delete adverse credit history associated with the loan). *See generally* 34 C.F.R. § 685.214(b).

## FACTS COMMON TO THE CLASS

### The Department Extends the Look-Back Periods for Students Who Attended Specified Schools That Closed under "Exceptional Circumstances"

21. On January 16, 2025, the Department announced its determination that several schools closed under exceptional circumstances and that it had correspondingly adjusted the closed school discharge look-back periods for students who attended those schools:

> The Department today also announced additional actions that will make more borrowers eligible for a closed school loan discharge. Generally, a borrower qualifies for a closed school discharge if they did not complete their program and were either still enrolled when the school closed or left without graduating within 120 days before it closed. However, the Department has determined that several schools closed under exceptional circumstances that merit allowing borrowers who did not complete and were enrolled in the school more than 120 days prior to its closure to qualify for a closed school discharge.

The Department's announcement of the 2025 Decision is attached as Exhibit A.

22. The 2025 Decision specified the following adjusted look-back periods:

> "To May 6, 2015, for all campuses owned at the time by the Career Education Corporation (CEC), which have since closed. That is the day CEC announced it would close or sell all campuses except for two brands. This affected . . . Le Cordon Bleu, Brooks Institute, Missouri College, Briarcliffe College, and Sanford-Brown.

> To December 16, 2016, for campuses owned by the Education Corporation of America (ECA) on that date that closed. ECA operated Virginia College, Brightwood College, EcoTech, and Golf Academies and started on the path to closure after its accreditation agency lost federal recognition and ECA could not obtain accreditation elsewhere.
>
> To October 17, 2017 for all campuses owned or sold on that date by the Education Management Corporation (EDMC) and that later closed. That is the day EDMC sold substantially all of its assets to Dream Center Educational Holdings. The decision affects borrowers who attended the Art Institutes, including the Miami International University of Art & Design and Argosy University.
>
> To April 23, 2021, for Bay State College. That is the day this Massachusetts-based college began to face significant accreditation challenges, which eventually led to the school losing accreditation and closing in August 2023."

*See* Exhibit A.

23. The Department tied each extended look-back period to a specific event that marked the start of the respective schools' path to closure. For example, for campuses owned by CEC, the Department explained that May 6, 2015 was "the day CEC announced it would close or sell all campuses except for two brands." *Id.*

24. With respect to closed school discharge entitlement, the 2025 Decision stated:

> Generally, eligible borrowers will have to apply for these discharges, but the Secretary has directed Federal Student Aid to make borrowers aware of their eligibility, and to pursue automatic discharges for those affected by closures that took place between 2013 and 2020 and who did not enroll elsewhere within three years of their school closing.

*Id.*[1] The 2025 Decision did not condition effectuation of the extended look-back periods on further agency action.

---

[1] The 2025 Decision's direction to provide automatic discharges for closures that took place between 2013 and 2020 tracks the Department's regulatory obligations, which require the Secretary to discharge, without an application, the loans of eligible borrowers whose schools closed on or after November 1, 2013, and before July 1, 2020, and who did not re-enroll in a Title IV-eligible institution within three years. *See* 34 C.F.R. § 685.214(c)(3)(ii) (2021).

25. The Department has never publicly withdrawn, rescinded, or modified the 2025 Decision.

**The Department's Failure to Implement the 2025 Decision**

26. On information and belief, Defendants have without explanation rescinded, abandoned, or failed to implement the extended look-back periods, thereby unlawfully denying closed school discharges to borrowers made eligible by the 2025 Decision.

27. Defendants implemented this policy change without any public notice, announcement, or justification.

28. As a result, Mr. Gaussoin and members of the class remain obligated to repay federal student loans that the Secretary has already determined are eligible for discharge. They continue to accrue interest on those loans and many may face collection—including, for borrowers in default, involuntary collection through Treasury offset and administrative wage garnishment.

29. Class members are also denied the other benefits of a closed school discharge, including reimbursement of amounts previously paid on their loans, deletion of adverse credit history, and restoration of eligibility for federal student aid. *See* 34 C.F.R. § 685.214(b)(1)–(4) (2021).

30. On information and belief, many class members do not know that they are eligible for a discharge because the Department has not notified them of their eligibility, as required by the 2025 Decision.

31. The Department contracts with third-party companies ("Title IV student loan servicing companies") to service federally issued student loans. When the Department makes an "exceptional circumstances" determination and extends the closed school discharge look-back period, it provides guidance to those servicers with instructions on implementing the determination

for borrowers. On information and belief, the Department has not done this with respect to the 2025 decision.

## FACTS CONCERNING NAMED PLAINTIFF

32. Brooks was a for-profit college located at 5301 North Ventura Avenue, Ventura, California 93001, that offered programs in photography, film, and visual journalism.

33. Mr. Gaussoin enrolled at Brooks on or about September 2, 2014. During his time at Brooks, he transferred between programs in the Professional Photography, Visual Journalism, and Film programs. His final program of study was a Bachelor of Fine Arts in Film.

34. Mr. Gaussoin financed his education at Brooks with federal student loans made under the William D. Ford Federal Direct Loan Program. His loans were disbursed during his enrollment in 2014 and 2015.

35. Mr. Gaussoin attended Brooks continuously from the fall 2014 term through the fall 2015 term. After the fall 2015 term, he took an approved leave of absence because he had an opportunity to gain work experience in action photography. Mr. Gaussoin planned to return to Brooks to finish his degree. His last date of attendance was December 17, 2015.

36. When Mr. Gaussoin returned to Brooks in August 2016 to re-enroll, he was stunned to learn that the school was closing. Because of the closure, Mr. Gaussoin was unable to re-enroll in Brooks or finish his degree.

37. Mr. Gaussoin did not complete his program of study at Brooks, at another branch or location of Brooks, through a teach-out agreement at another school, or by transferring academic credits to another school. Nor did Mr. Gaussoin request or receive a refund or payment from Brooks or any third party due to the school’s closure.

38. According to the official Closed School Search File maintained by the Department's Federal Student Aid office, Brooks closed on August 19, 2016.

39. As part of the 2025 Decision, the Department determined that Brooks closed under "exceptional circumstances" and extended the look-back period to May 6, 2015.

40. Because Mr. Gaussoin was enrolled at Brooks on May 6, 2015 and never completed his program, under the 2025 Decision he is eligible for a closed school discharge.

41. Mr. Gaussoin applied for the discharge on August 23, 2026. Although not required, in his application he expressly invoked the extended look-back period. In the box provided for the closed school's address, Mr. Gaussoin wrote: "The look back window was extended *please review*." He also affixed a note to the first page of the application stating the same. Mr. Gaussoin's application is attached as Exhibit B.

42. By letter dated August 31, 2026—eight days after Mr. Gaussoin submitted his application—the Department, acting through its loan servicer, the Missouri Higher Education Loan Authority (MOHELA), denied Mr. Gaussoin's closed school discharge application. The Department's denial letter is attached as Exhibit C.

43. The denial letter stated that, "[a]fter careful review," Mr. Gaussoin's request "does not meet the necessary criteria for approval" because he "withdrew more than 180 days before the school closed."[2]

[2] The 180-day period recited in the denial does not govern Mr. Gaussoin's loans. Because his loans were first disbursed before July 1, 2020, the applicable regulation provides a 120-day period that the Secretary may extend where exceptional circumstances justify an extension. 34 C.F.R. § 685.214(c)(1)(i)(B) (2021). On information and belief, the denial instead applied the 2022 amendments to the closed school discharge regulations, despite Congress determining those amendments do not apply to loans like Mr. Gaussoin's. *See* Pub. L. No. 119-21, § 85002, 139 Stat. 72, 356 (2025).

44. The denial letter did not mention the 2025 Decision, the extended look-back period, or the Secretary's determination that Brooks closed under exceptional circumstances. Nor did it explain why the extended look-back period for CEC schools did not apply to Mr. Gaussoin.

45. The denial letter informed Mr. Gaussoin that he "remain[s] responsible for making [his] monthly payments."

46. As a result of Defendants' unlawful rescission, abandonment, or failure to implement the 2025 Decision, Mr. Gaussoin remains obligated to repay federal student loans that the Department has determined are eligible for discharge.

## CLASS ACTION ALLEGATIONS

47. Mr. Gaussoin files this class action on behalf of himself and all other individuals who are similarly situated. He seeks to represent a class consisting of:

> All borrowers of federal student loans who: (1) attended, or borrowed on behalf of a student who attended, a school covered by an extended look-back period announced in the 2025 Decision; (2) withdrew, or whose student withdrew, from that school without completing the program of study on or after the start date of the applicable extended look-back period; and (3) have not received a closed school discharge of the loans taken out to attend that school.

48. The proposed class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(2).

49. The class is so numerous that joinder of all members is impracticable. The extended look-back periods cover campuses owned by three national chains—CEC, EDMC, and ECA—as well as Bay State College, which together enrolled tens of thousands of students during the relevant periods.

50. The exact number of class members can be readily determined using the Department's records.

51. The nature of relief sought, as well as questions of fact and law, are common to all members of the class. The common questions of law and fact include, but are not limited to, whether Defendants' rescission, abandonment, or failure to implement the 2025 Decision violates the APA.

52. Plaintiff's claims are typical of the claims of other class members, as they arise out of the same course of conduct and legal theories and challenge the Department's conduct with respect to the class as a whole.

53. Plaintiff is capable of and committed to fairly and adequately protecting the interests of the class and has no conflicts with other class members.

54. Plaintiff is represented by counsel experienced in higher education law, administrative law, and class action litigation. Counsel should be appointed as class counsel pursuant to Federal Rule of Civil Procedure 23(g).

55. A class is appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants' unlawful rescission, abandonment, or failure to implement the 2025 Decision applies generally to the class, such that final relief is appropriate with respect to the class as a whole.

56. Defendants' failure is the same as to every class member: each is entitled to a closed school discharge under the 2025 Decision and has not received one. A single order requiring the Department to implement the 2025 Decision would therefore provide relief to the entire class at once.

## CAUSES OF ACTION

### COUNT I
***Unlawfully Withheld and Unreasonably Delayed Agency Action – APA § 706(1)***
**(Plaintiff and the Class)**

57. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

58. Defendants have violated the APA, 5 U.S.C. § 706(1) by failing to implement the 2025 Decision.

59. The APA directs a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

60. A claim under § 706(1) may proceed where "an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

61. As part of the 2025 Decision, the Secretary "directed Federal Student Aid to make borrowers aware of their eligibility" for closed school discharges, as well as to "pursue automatic discharges for those affected by closures that took place between 2013 and 2020 and who did not enroll elsewhere within three years of their school closing." *See* Exhibit A.

62. On information and belief, since January 2025, Defendants have not granted a single closed school discharge pursuant to the 2025 Decision.

63. On information and belief, since January 2025, Defendants have not made borrowers aware of their eligibility for closed school discharges, as required by the 2025 Decision. Nor have Defendants notified their Title IV student loan servicing companies of the 2025 Decision, or taken steps to ensure that servicers are aware of and implementing the 2025 Decision.

64. Defendants' inaction has harmed and prejudiced Plaintiff and members of the class, including by threatening their economic welfare.

65. The Department has no justification for its withholding or delay of the implementation of the 2025 Decision and continued illegal collection on federal student loans that it is required to discharge.

66. The Court should declare that Defendants have violated the APA and compel the Department to implement the 2025 Decision.

## COUNT II
***Violation of APA, 5 U.S.C. § 706(2) – Arbitrary, Capricious, and Unlawful Agency Action***
**(Plaintiff and the Class)**

67. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

68. Under the APA, a reviewing court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

69. The 2025 Decision announced the Secretary's determination, made pursuant to authority under 34 C.F.R. § 685.214(c)(1)(i)(B) (2021), that the covered schools closed under exceptional circumstances justifying an extension of the closed school discharge look-back period.

70. On information and belief, Defendants have adopted a policy under which they will not grant any closed school discharges pursuant to the 2025 Decision.

71. This policy of refusing to provide discharges pursuant to the 2025 Decision constitutes a final agency action within the meaning of the APA. It marks the consummation of Defendants' decisionmaking and determines class members' rights and obligations, denying them access to discharges to which they are entitled, and leaving them obligated to repay their loans. *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). There is no other adequate remedy in a court. 5 U.S.C. § 704.

72. Defendants' policy is arbitrary, capricious, and otherwise not in accordance with the law because Defendants have a legal obligation to grant discharges pursuant to the HEA, the Department's implementing regulations, and the 2025 Decision. Their refusal to do so violates that legal duty.

73. Defendants have never publicly acknowledged, withdrawn, or modified the 2025 Decision, and they have not given public notice of any change in position.

74. Defendants therefore adopted this policy without showing any awareness that they were changing position and without considering the harms to Plaintiff and the class.

75. Defendants' arbitrary and capricious conduct has injured Plaintiff and the class and will continue to do so until the Department fully implements the 2025 Decision.

76. The Court should declare that the Department's final agency action is unlawful, vacate the Department's policy, and remand to the Department with direction to implement the 2025 Decision.

**COUNT III**
***Violation of APA, 5 U.S.C. § 706(2) – Arbitrary, Capricious, and Unlawful Denial of Plaintiff's Application***
**(Plaintiff in his Individual Capacity)**

77. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

78. Under the APA, a reviewing court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

79. The HEA requires the Secretary to discharge a federal student loan if the borrower was unable to complete the educational program due to the school's closure. 20 U.S.C. § 1087(c)(1).

80. The regulations that govern Plaintiff's loans provide that a closed school discharge must be granted if a borrower was attending the school when it closed or withdrew not more than 120 days prior to the school's closure. 34 C.F.R. § 685.214(c)(1)(i)(B). When the Secretary finds

that a school closed under "exceptional circumstances," the Secretary may extend that look-back period.

81. As part of the 2025 Decision, the Department determined that Brooks closed under "exceptional circumstances" and extended the look-back period to May 6, 2015, the date of CEC's announcement.

82. Because Plaintiff was enrolled at Brooks until December 2015 and never completed his program, he is entitled to a closed school discharge under the 2025 Decision.

83. Plaintiff applied for a closed school discharge on August 23, 2026. By letter dated August 31, 2026, the Department denied his application because he "withdrew more than 180 days before the school closed." The denial did not mention the 2025 Decision, the extended look-back period, or the Secretary's determination that Brooks closed under exceptional circumstances. The denial also cited to the incorrect governing standard.

84. The Department's August 31, 2026 denial is a final agency action, and no further exhaustion is available or necessary.

85. The denial of Plaintiff's closed school discharge application is arbitrary and capricious in that it is contrary to the evidence before the Department establishing that Plaintiff was in attendance through at least December 17, 2015, which is within the extended look-back period for Brooks.

86. The Court should vacate the Department's denial of Plaintiff's closed school discharge application and remand to the Department with direction to approve his application.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the class, requests that this Court:

A. Certify the class defined in paragraph 47 pursuant to Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiff as class representative, and appoint undersigned counsel as class counsel;

B. Declare that the Department's rescission, abandonment, or failure to implement the 2025 Decision is unlawful;

C. Vacate the Department's policy of refusing to implement the 2025 Decision and remand to the Department with direction to implement the 2025 Decision;

D. Order Defendants to instruct their Title IV servicers to implement the 2025 Decision and to stop collection on the federal student loans of class members pending the discharge of their loans;

E. Compel the Department to make borrowers aware of their eligibility for closed school discharges pursuant to the 2025 Decision;

F. Order Defendants to provide the Court with a status report detailing steps taken to comply with this Court's order, including copies of all instructions, guidelines, or other information sent to Title IV servicers;

G. On behalf of Plaintiff in his individual capacity, vacate the Department's denial of his closed school discharge application and remand to the Department with direction to approve his application or, in the alternative, an order retaining jurisdiction and remanding to the Department for further action consistent with the APA;

H. Retain jurisdiction of this matter until Defendants have fulfilled their legal and Court-ordered obligations, as set forth in this Complaint and any subsequent orders of this Court;

I. Award Plaintiff and the class their costs and reasonable attorneys' fees for this action; and

J. Grant such further relief as the Court may deem just and proper.

Dated: October 28, 2026

Respectfully submitted,

*Alexander S. Elson*
Alexander S. Elson (D.C. Bar No. 1602459)
Daniel A. Zibel (D.C. Bar No. 491377)
Madeline D. Wiseman (D.C. Bar No. 90031948)
Laura Bart (D.C. Bar No. 90038373)
**NATIONAL STUDENT LEGAL DEFENSE NETWORK**
1701 Rhode Island Avenue NW
Washington, D.C. 20036
Tel. 202-734-7495
alex@defendstudents.org
dan@defendstudents.org
madeline@defendstudents.org
laura@defendstudents.org

*Attorneys for Plaintiff and the Proposed Class*